No. 32,839

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF GEARY, *Appellee*, v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant*.

(57 P. 2d 82)

Opinion filed May 9, 1936.

*Wint Smith*, assistant attorney general, *Gale Moss*, assistant attorney for the state highway commission, and *Roland Boynton*, of Topeka, for the appellant.

*Irving M. Platt*, of Junction City, *Robert Stone*, *James A. McClure*, *Robert L. Webb*, *Beryl R. Johnson* and *Ralph W. Oman*, all of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover money. Judgment was for plaintiff. Defendant appeals.

The action was brought against the state highway commission by the board of county commissioners of Geary county. State highway No. 57 runs through Geary county. Prior to August 6, 1929, it was a part of the state highway system. In April, 1929, the state highway commission took over the state highway system under the terms of chapter 225 of the Laws of 1929.

On August 6, 1929, the board of county commissioners entered into a contract with the state highway commission whereby the county agreed to construct 2.178 miles of grading and culverts on highway 57 in Geary county. The county agreed to construct this project at a cost of not to exceed $17,000. This contract consisted of an agreement, a proposal and a schedule of unit prices. The contract was attached to the petition. It referred to the proposal

which will be discussed presently. It further referred to 2.178 miles of grading and culverts, known as Project No. 57-1-K851. It then provided that the board of county commissioners would at its own expense do all the work and furnish all materials and labor necessary in accordance with the plans and specifications.

The proposal contained some provisions not important to us now and in addition the following paragraphs:

"5. The undersigned further understands and agrees that he is to furnish and provide all the necessary material, machinery, implements, tools, labor, etc. (except such materials and equipment as will be furnished by the commission), and to do and perform all the work necessary under the aforesaid conditions to complete the improvement of the aforementioned highway, in accordance with all incidental work necessary therefor, which plans and specifications it is agreed are part of this proposal; and to accept, in full compensation for the work enumerated or covered by the plans and specifications, the unit price submitted for each item of work.

"6. The undersigned further agrees that should any discrepancy occur between the unit prices and the gross sum bid, the unit prices shall apply, unless the bid is rejected as unbalanced and irregular.

"7. The undersigned further agrees that the quantities enumerated are not guaranteed by the commission, and with such understanding he accepts the quantities as tentative and agrees to receive payment at the unit prices for work performed."

The schedule of prices referred to was attached. It is as follows:

STATE HIGHWAY COMMISSION OF KANSAS

Edition, 1929   County: Geary

Project No. 57—1—K851

SCHEDULE OF PRICES

| Approximate quantity | Item with unit price written in words | Amount Dollars   Cts. |
|---|---|---|
| 15,493.6 | Cu. yds. earth excavation | |
| 7,047.6 | Cu. yds. rock excavation | |
| 6,596.9 | Cu. yds. borrow | |
| 1,900 | Lin. ft. cable guard fence | |
| 111.09 | Cu. yds. class A concrete | |
| 1.8 | Cu. yds. class E concrete | |
| 9,185.2 | Lbs. reinf. steel | |
| 20 | Lin. ft. 18″ RCP pipe | |
| 20 | Lin. ft. 24″ RCP pipe | |
| | Cost not to exceed | $17,000.00 |
| | Grand total | $17,000.00 |

NOTE: The bidder should extend all items and total the bid.

It should be noted that the number of cubic yards of earth, rock and similar items was listed but no unit prices were included. At the bottom of the schedule was the notation, "Cost not to exceed $17,000."

It will be seen that the original contract entered into by the highway commission and the board of county commissioners was for the county to build 2.178 miles of road at a cost of not to exceed $17,000 to the highway commission.

In October, 1929, work was started under the contract. In January, 1930, the county submitted to the highway commission estimate number 1, covering work begun in October, 1929, and asking for payment up to February 1, 1930, in the amount of $11,976.82. This was in accordance with standard specifications which are a part of every highway contract. This estimate was allowed by the highway commission and 85 percent of it was paid.

On April 14, 1930, while the county was still engaged in the construction of the road under its original contract the board of county commissioners and the state highway commission entered into a supplemental contract on this project. This contract is the reason for this action and will be set out here. It is as follows:

"CONTRACT AND AGREEMENT

"It is hereby understood and agreed by and between the State Highway Commission of Kansas, party of the first part, and Geary county, contractor, party of the second part, in the contract, entered into on the 6th day of August, 1929, for the construction of grading and culverts on Project No. 57-1-K851, section ——, shall be changed in the following particulars:

"The beginning of the project to be a point on K57 near the center of sec. 9, T. 12 S., R. 6 E. and continuing along K57 as routed in a S. E. direction to the S. W. cor. sec. 23, T. 13 S., R. 7 E.

"The work to include grading, culverts and right of way as needed and when needed, being approximately 12.7 miles.

"And that after the said changes shall have been made which additions and changes are hereby directed to be a part of the original contract; the agreement as shown by the original contract together with the above-named additions and changes shall constitute the agreement and contract of the parties hereto, and it is further agreed that upon obtaining the consent of the surety thereon that the terms of the bond heretofore entered into between these parties shall include the additions and changes herein made, the same as though such additions and changes were in the original contract.

"This agreement made and entered into this 14th day of April, 1930."

It will be noted that the only place where prices are mentioned in the original contract is in the schedule of unit prices and that there are no prices mentioned in the supplemental contract. The only thing the supplemental contract did was to make the project 12.7 miles long instead of 2.178 miles. The only contract price mentioned anywhere in the contract is the $17,000 mentioned in the schedule of unit prices attached to the original contract.

In December, 1930, a final estimate, which we will call estimate number 2, was submitted to the highway commission. This estimate was for an amount equal to the difference between $17,000 and the amount which had been paid on the former estimate. It was paid by the highway commission.

On March 30, 1931, the board of county commissioners submitted to the highway commission an estimate on Project 57-1-K851. This was the project covered by the estimates of which we have already spoken. This estimate was as follows:

STATE HIGHWAY COMMISSION OF KANSAS

CONTRACTOR'S PAYMENT ESTIMATES

Project 57—1—K851; section ............; county, Geary.

Type of construction, grading culverts and bridges. Estimate No. 3, final. Work started October, 1929. Payment to September 1, 1930. To Geary county, ....................................................................................... .
(Name)         (Address where payment is to be mailed)

COMPLETED QUANTITIES OF ITEMS IN ORIGINAL CONTRACT

| Completed quantities | Item of work (enter in same order as items in original contract) | Unit price | Value of completed work |
|---|---|---|---|
| 15,493.6 | Cu. yds. earth excavation..................... | ...... | .......... |
| 7,047.6 | Cu. yds. rock excavation....:................ | ...... | .......... |
| 6,596.9 | Cu. yds. borrow.......................... | ......: | .......... |
| 111.09 | Cu. yds. class A concrete.................... | ...... | .......... |
| 1.8 | Cu. yds. class E concrete.................... | ...... | .......... |
| 9,185.2 | Lbs. of reinforcing steel..................... | ...... | .......... |
| 20 | Lin. ft. 18″ RCP.......................... | ...... | .......... |
| 20 | Lin. ft. 24″ RCP.......................... | ...... | .......... |
| 1,900 | Lin. ft. cable guard....................... | ...... | .......... |
| | Total .................................. | ...... | $17,000.00 |

APPROVED OVERRUNS COMPLETED

Force account, labor, repairs, supplies and materials............... $17,260.39
Grand total completed work....................................... 34,260.39
Due contractor (grand total 100%).............................. 34,260.39
Total previous payments to contractor........................... 17,000.00
Amount of this payment to contractor........................... 17,260.39

It should be noted that this estimate contained an item described as "Approved Overruns Completed." Under this head appeared an item of "Force account, labor, repairs, supplies and materials, $17,260.39." Below this item appeared items showing the $17,000 of completed work, making a total of $34,260.39 of completed work. After the payment of $17,000 to the county was deducted an item of $17,260.39 was claimed to be due the county. Payment in accordance with this estimate was refused by the highway commission. This action followed. It will be noted that nowhere in the contract, the supple-

mental contract, the proposal, or the schedule of unit prices does any reference appear to a payment of anything for "force account, labor, repairs, supplies and materials."

The petition of the county alleged the making of the original contract as has been set out here; the completion of it and payment made in accordance therewith. The petition then alleged the making of the supplemental contract, by the terms of which the work designated in the contract was extended for 12.7 miles; the completion of the work by the county and its approval by the highway commission. The petition then alleged that the county actually and necessarily expended in carrying on the work and completing the supplemental contract the sum of $17,360.38 for labor and material, for which sum it claimed to be entitled to reimbursement from the highway commission. The petition then alleged that the services performed in accordance with the supplemental contract had been ratified by the highway commission and that the commission had received and retained the benefits of the work done by the county.

The highway commission filed an answer in which it alleged the execution of the documents, the doing of the work and the making of the payments about as they have been detailed heretofore. There was a statement in the answer that under the terms of the supplemental agreement there was no further consideration passing from defendant to plaintiff but that under the terms of the contract and supplemental agreement the 12.7 miles of road was to be built by Geary county for a sum not to exceed $17,000. All of the various documents that evidenced the transaction between the parties were attached to the answer.

To this answer the plaintiff filed a general denial. A jury was waived and the issues were submitted to the court. The trial court did not make any findings of fact and conclusions of law but gave judgment to the county for the amount prayed for with interest from the date of judgment. The trial court made a written memorandum opinion in which it stated the facts about as they have been given here. The court took the view that the situation was the same as though the county had undertaken to construct the 10.5 miles of road covered in the supplemental contract for no consideration at all. The trial court held that such a contract was illegal on the part of the county and a shift and device to enable the county to do something that all parties knew it could not do—hence the high-

way commission could not keep the avails of the illegal act of the board of county commissioners.

The plaintiff in its brief in this court does not follow the reasoning of the trial court. Its contention here is that it could make a contract with the state highway commission for the improvement of a state road under the provisions of sections 8 and 11 of chapter 225 and section 1 of chapter 229 of the Laws of 1929, and that the above sections give authority to make a contract, but do not authorize the county to make a contract for profit and loss. The argument therefore is that such a contract must contemplate the reimbursement to the county for its actual expenses.

The contention of the defendant is that under the terms of R. S. 1933 Supp. 68-407, which is section 8 of chapter 225 of the Laws of 1929, the highway commission could enter into a contract to improve a road; that such a contract is like any other contract and should be enforced as such.

It has already been noted in this opinion that there was no consideration named in either the contract or the supplemental contract aside from the $17,000 which had been paid the county before this action was brought. Neither was the matter of the county doing the work for just what it cost mentioned in any contract. To arrive at the conclusion reached by the trial court, and contended for here by plaintiff, would require a process of reasoning somewhat similar to that used by the trial court.

The argument of plaintiff is based upon the supposition that when the state highway commission took over the state highway system, as much of the state system as lay within any one county ceased to be a highway of that county as much as though it lay beyond its borders. It is much the same contention as was made by the plaintiff in the case of State, ex rel., v. State Highway Comm., 139 Kan. 858, 33 P. 2d 324. In that case it was contended that the use of money raised by the county by a levy on the property in the county to assist in the construction of a part of the state highway system in a county was an unconstitutional diversion of money raised by taxation and on that account the money contributed by the county and used in building a part of the state highway system should be paid back to the county by the highway commission. This court held contrary to this view and said:

"In considering this question we must remember that the roads constructed were located wholly in Barton county, and, even though they were a part of

what had been designated as the state highway system, still the people of the county had more of an interest in them and received more benefit from them than those people who lived outside the county. It is worth while noting that when a road became a part of the state highway system the state then became responsible for its maintenance. This has the result of making more money available from the county levy. for the construction and maintenance of the county roads. It cannot be said, therefore, that the money expended on the state roads was not of special benefit to the taxpayers of that county."

Once we have reached this conclusion the argument of plaintiff fails. It is idle to say that the contract as written bound the board of county commissioners to build a road for no consideration at all. The taxpayers of the county did receive a benefit from the building of this project different from that received by the state at large. Every mile of permanent road built in the state helps somewhat in the movement of the products of the farms in that vicinity to a market. The availability of federal funds for the construction of transcontinental highways has focused the attention of the public generally on roads of that type. The fact remains, however, that the real function of a road in Kansas is to enable the produce of the farms to more readily start on its journey to market. Such a purpose would be served by the construction of a road such as we have in this case. There is nothing unlawful about the board of county commissioners taking money raised by taxation and using it for such purposes.

R. S. 1933 Supp. '68-407 was enacted as a part of the chapter which provided for the taking over of the system of highways that had already been designated as state highways. The highway commission had to be given the authority to contract generally. This was done by this section. The section went further, however, and provided as follows:

"Provided further, That the State Highway Commission may enter into contracts with any of the counties of the state to do any work in the repair, construction or maintenance of the state highway system."

There is no language here from which it may be said that the county should be paid for all the "labor and material" it should expend in operating under the above provision. We have already demonstrated that the county has an interest in the construction of a highway aside from the interest the state as a whole has in it. What that provision means is that where the board of county commissioners has a project on the state system which it is anxious to improve without waiting for it to be put on the program of the high-

way commission, the highway commission could make a contract with the board so that the board would have authority to go upon the state highway system and proceed to construct a project that might be agreed upon.

This view is supported by an examination of part of the language used in R. S. 1933 Supp. 68-406. This is the section that provides for the taking over of the system of state highways by the state highway commission. Attention is called to the following provision:

"Highways designated under this act shall be state highways, and all other highways shall be either county roads or township roads as provided for elsewhere in the Kansas statutes. The state highway system thus designated shall be constructed, improved, reconstructed and maintained by the state highway commission from *funds hereinafter and otherwise by law provided.*"

It will be noted that the highway commission was to construct the highway from funds "hereinafter provided," that is, money raised by a tax on gasoline and the license tax on automobiles and from funds "otherwise by law provided," which includes money raised by counties and available for use in constructing part of the state highway system. The words "funds" otherwise by law provided includes funds raised in the various counties and deemed available by the board of county commissioners for such a purpose.

We have concluded that the contract and supplemental contract entered into between the board of county commissioners and the state highway commission was one contemplated by the statute. The highway commission paid approximately half the cost of a project and the county bore the expense of the other half. It follows that the judgment of the trial court was erroneous.

The judgment of the trial court is reversed with directions to enter judgment for the defendant.

DAWSON, J. (dissenting): The trial court's general findings settled every issue of fact in favor of plaintiff since no special findings were requested. As I read the record, the state highway commission was desirous of obtaining an authoritative decision on the point whether it could pay the county's bill—not to escape payment thereof through an adjudication that it had "put something over" on the county commissioners, by getting them to improve 12 miles of road for the amount they had agreed to pay for the improvement of two and a fraction miles. It adds nothing to the soundness of the majority opinion to argue that the road will be of special benefit to Geary county. Every state road is of especial benefit to the par-

ticular communities through which it runs, but the present state policy of road building is not governed by such considerations.

The original contract, fairly read, meant that the county should be reimbursed for the cost of improving the 2.178 miles of road. There was a proviso that such cost should not exceed $17,000. The state highway commission is staffed with competent engineers who knew that the improvement of that particular 2.178 miles of road should not cost more than $17,000, and so that pertinent and sensible restriction was inserted in the contract. When that contract was enlarged to provide for the improvement of 12 miles, the fair intendment of the supplemental contract, read in the light of the circumstances, was that it was to be paid for at cost. To hold that the intention of the parties was that Geary county was to be paid no more for building 12 miles of road than for building 2 miles is to make a fool out of the county and a knave out of the commission—a conclusion which should be avoided and can be avoided under familiar rules for the interpretation of written instruments. In 13 C. J. 540-541, it is said:

"The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided."