[S. F. No. 15215.   In Bank.—December 26, 1934.]

SOUTHERN CALIFORNIA ROADS COMPANY (a Corporation), Petitioner, v. HUGH J. McGUIRE et al., Respondents.

Young, Lillick, Olson, Graham & Kelly, E. R. Young and E. L. Searle for Petitioner.

Chas. R. Nelson, Gibson, Dunn & Crutcher, Henry B. Ely and B. P. Griffith, as *Amici Curiae* on Behalf of Petitioner.

U. S. Webb, Attorney-General, John O. Palstine, Deputy Attorney-General, Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Thatcher J. Kemp, Deputy City Attorney, for Respondents.

C. C. Carleton, Frank B. Durkee, C. R. Montgomery, Entenza & Gramer, Chas. F. Lowy, Leo L. Schaumer and Arthur L. Johnson, as *Amici Curiae* on Behalf of Respondents.

CURTIS, J.—This is an original proceeding for a writ of mandate directed to the defendants as the members of and constituting the Board of Public Works of the City of Los Angeles, requiring defendants to pass upon the sufficiency and form of a certain contract for the improvement of Sepulveda Boulevard from National Boulevard to Venice Boulevard in said city, and to sign and execute said contract on behalf of said Board of Public Works. On the filing of this petition, an alternative writ of mandate was issued and served on said defendants. The defendants have appeared and filed a general demurrer to the petition.

The petition shows that the refusal of the defendant Board of Public Works to execute said contract was based upon the ground that neither the notice inviting bids for the performing of the work contemplated by said contract, nor the draft of said contract specified the general prevailing rate per diem wages in the city of Los Angeles for each craft or type of workman needed to execute said contract.

The improvement of Sepulveda Boulevard contemplated by said contract was to be constructed in pursuance of an act of the legislature approved May 26, 1927, as amended

at its last session. (Stats. 1933, p. 2029.) Section 5 of this act provides in part as follows:

"The California highway commission shall have jurisdiction and authority as provided in this section with respect to any state highway lying within any municipality as specifically described by law, also with respect to a state highway, the natural course of which runs or passes into or through any municipality or contiguous municipalities. Unless any such route or routes within a municipality is specifically described by law it shall be the duty of the highway commission to designate and to determine the location of connecting portions either through or around the municipality as the commission may determine will be of the greatest benefit to through traffic and the said commission shall determine such connecting portions with respect to all state highways, the natural course of which runs or passes into or through any municipality.

. . . . . . . . . . .

"The department of public works is hereby authorized to construct, reconstruct, widen, otherwise improve or maintain any such highway within a municipality or upon the allocation of any funds by the California highway commission for any said purpose the director of the department of public works may as he shall deem expedient enter into a cooperative agreement with such municipality for the performance of any such work by the state or by such municipality or for the division of the cost thereof as between the state and such municipality. All work performed under the provisions of this section shall be approved by the director of public works.

"The director of public works may delegate to any such municipality all or any part of the powers and jurisdiction vested by law in him or in the department of public works over and in respect to all or any section of any such state highway within such municipality."

By section 7 of said act as amended in 1933, certain highways or routes were classified and designated as secondary state highways and the department of public works was authorized and directed to lay out and construct said highways "by the most direct and practicable routes, as determined by the California highway commission, between the termini stated herein, and to improve and maintain the

same subject to the provisions of this act as applicable.''
The remainder of said section 7 as amended is devoted en-
tirely to the designation by name, route number and termini
of the secondary state highways which are created by said
act. Among the state highways so created and classified
as secondary highways which said department of public
works was authorized and directed to lay out, improve, and
maintain were included ten public streets in the city of
Los Angeles, among which was that part of Sepulveda Boule-
vard between Pico Boulevard and Venice Boulevard. In
pursuance of the act of the legislature above mentioned, as
amended in 1933, and on December 21, 1933, a contract was
entered into between the city of Los Angeles and the de-
partment of public works, acting through the director of
public works, for some seventeen different improvement pro-
jects in the city of Los Angeles, included in which were said
ten secondary highways created by section 7 of the act of
the legislature mentioned above, one of which was Sepulveda
Boulevard between Pico Boulevard and Venice Boulevard,
designated in said contract as item No. 12. By this contract
it was agreed that the state would construct improvements
designated therein as items 1, 2, 3 and 14, and that the city
of Los Angeles would construct or cause to be constructed
improvements designated as items 4 to 13, inclusive, in said
contract, being the said ten secondary highways referred to
above.

The cost of these improvements was to be provided by the
state, partly from funds budgeted by the California highway
commission, authorized under the provisions of the National
Recovery Act for expenditure within the city for the im-
provement of the federal aid route within said city, and
partly from funds allotted by the state highway commission
for expenditure within said city, the amount of such funds
having been budgeted from the state highway fund for co-
operative work within incorporated municipalities.

The contract further provides that the city shall construct
or cause to be constructed the improvements designated as
items 4 to 13, inclusive, in accordance with specifications and
estimates to be approved by both parties, and that the work
of constructing said improvements shall be done to the
satisfaction of the department of public works of the state
and shall be subject to the inspection of its representatives,

and furthermore that no change shall be made in the approved specifications except in minor matters due to unforeseen contingencies, unless approved by the state, and that said work shall be done by contract unless the performance thereof shall be done by day labor. The department of public works also agreed to delegate to the city the expenditure of funds to defray the costs of items 4 to 13, inclusive. After the execution of said contract by the city of Los Angeles and the department of public works, the city advertised for bids for the improvement of Sepulveda Boulevard between National Boulevard and Venice Boulevard, being a portion of the work and improvement designated in said item 12. The petitioner herein submitted a bid agreeing to perform said work and improvement for the sum of $86,371.84, and the Board of Public Works of said city accepted said bid and awarded the contract for performing said work to petitioner as the lowest responsible bidder, for the contract price of $86,371.84, and ordered the city attorney to prepare said contract for said work. These proceedings were all ratified by the department of public works, and on or about June 22, 1934, the department of public works allocated and transmitted and paid to the treasurer of the city of Los Angeles the sum of $86,371.84 for the purpose of paying the cost of said work and improvement, the contract for which had been awarded to petitioner.

Thereafter said contract was prepared and executed by said petitioner, and accompanied by proper and sufficient undertakings as required by law, for faithful performance, and for payment of labor and materials, was transmitted to the Board of Public Works of said city by the city attorney with a recommendation by him that the Board of Public Works refuse to sign said contract, on the ground that the notice inviting bids and the contract itself did not specify the general prevailing rate of per diem wages in the city of Los Angeles for each craft or type of workman needed to execute said contract. Acting upon said recommendation, as stated before, the Board of Public Works, on June 22, 1934, refused to sign or execute said contract.

It is conceded that neither the notice inviting bids for said work nor the contract itself contained any specification of the general prevailing rate of per diem wages as provided in the "Public Works Wage Rate Act enacted in 1931".

(Stats. 1931, p. 910.)   The validity of this act was approved by this court in *Metropolitan Water District* v. *Whitsett,* 215 Cal. 400 [10 Pac. (2d) 751].

It is the contention of petitioner that the construction of the work and improvement of Sepulveda Boulevard by the city of Los Angeles is a municipal affair, and that in the performance of said work under the contract with petitioner it is not subject to the provisions of the Public Works Wage Rate Act of 1931.

The City of Los Angeles operates under a freeholders' charter, and by its charter has availed itself of the privilege extended to charter cities by section 6 of article XI of the Constitution, empowering them "to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws". If, therefore, the contemplated improvement of Sepulveda Boulevard is a municipal affair as this term is used in the Constitution, the Public Works Wage Rate Act, being a general law, would not be applicable to the contract providing for its improvement. (*City of Pasadena* v. *Charleville,* 215 Cal. 384 [10 Pac. (2d) 745].)   On the other hand, if the improvement of said street as contemplated by said city is of more than local concern, or if it is an affair in which the people generally of the state are concerned, the city in the construction of said improvement is subject to and is controlled by the general laws, including the Public Works Wage Rate Act of 1931.

Petitioner cites authorities to the effect that the improvement of its streets by a city is a municipal affair, and that a municipality is not subject to general laws in making such improvement when it has elected to avail itself of the privilege afforded by the Constitution to become independent of general laws in its municipal affairs.   Conceding that these authorities are all that petitioner claims them to be, it may be seriously questioned whether they govern the present situation.   The street which the city plans to improve under the contract with the petitioner is not an ordinary city street, and in fact, legally speaking, it is not a city street at all.   By section 7 of the act of May 26, 1927, as amended in 1933, above referred to, as

we have already stated, certain highways including Sepulveda Boulevard ''are hereby declared to be and are hereby classified as secondary state highways and the department of public works is hereby authorized and directed to lay out and construct said highways . . . and to improve and maintain the same,'' etc. Not only has Sepulveda Boulevard been declared by legislative act to be a state highway, with the right of the state through its highway commission to improve and maintain it, but as we have seen, the money to make the identical improvement contemplated by said contract has been forwarded by the state, and by its proper officer paid into the city treasury. While the city has been delegated authority to expend said money in the construction of said improvment, it is expressly provided that the work of constructing said improvement shall be subject to the approval of the department of public works of the state, and that all plans, specifications and estimates for said improvement shall be submitted to, and approved by, the same, and shall not be changed, except in minor and unimportant details, without the approval of the state. After the improvement is completed the city agrees to maintain the street as improved, but should the department of public works consider the maintenance of said street by the city inadequate or unsatisfactory, and the city fail to correct the unsatisfactory condition after due notice, the department of public works may enter upon said street and maintain said street, and the cost thereof will be defrayed from the city's share of the one-quarter cent gasoline tax allocation. We think it is apparent from the foregoing statement of the law governing the status and improvement of said street, that Sepulveda Boulevard is not an ordinary city street, as that term is generally understood and as it is used in the authorities cited by petitioner, but that, as provided by said act it is a state highway. We think it is also apparent that the manner in which it is contemplated to improve said street, as shown by the contract between the department of public works and the city, whereby the entire cost of said improvement is to be met and defrayed by the state except that furnished by the federal government through the state, and the work of constructing said improvement is subject to inspection of the state's authorized representatives, indicates beyond any question that the work

of improving said street is not merely a local or municipal affair of the city, but that it is an affair in which the state has a direct and vital interest. This conclusion appears so obvious that citation of authority would seem unnecessary. However, practically the same question was before this court in the recent case of *Young* v. *Superior Court*, 216 Cal. 512 [15 Pac. (2d) 163].

In that case the petitioner, the owner of a lot in the city of Bakersfield, filed a petition in this court for a writ of prohibition to restrain the Superior Court of Kern County from taking further proceedings in a condemnation action pending before said court for the purpose of acquiring property for the construction of a state highway partly within and partly without said city. It was contended that the city of Bakersfield was a chartered city and that the opening of said street was a "municipal affair in so far as such acquisition applied to the property located within the city of Bakersfield". In denying said writ this court, at page 516 [216 Cal.] of the opinion, gave its reason as follows:

"It is insisted that by the charter provisions and particularly section 12 of article III the city accepted the offer contained in section 8 of article XI of the Constitution as amended at the general election held on November 3, 1914, permitting cities to remove themselves from the operation of general laws as to municipal affairs by incorporating in their charters a general provision to that effect. The contention presents an interesting question, inasmuch as the charter was ratified by the electors of the city four days after the constitutional provision became a part of the organic law. But in any view of the case now presented, the contemplated acquisition and improvement cannot be deemed a matter of purely municipal concern. As above outlined, the improvement is to be a part of the state highway system designed and constructed in part under the supervision of the department of public works of the state. It is located both within and without the city of Bakersfield. It is to be financed from federal, state and county funds with the remainder from special assessment on the property within and without the city specially benefited. As such it is of more than local concern, the general law is controlling and the county of Kern, having instituted the proceeding, is the mandatory of the state to carry it forward to

completion. (*Allied Amusement Co.* v. *Byram,* 201 Cal. 316 [256 Pac. 1097]; *County of Los Angeles* v. *Hunt,* 198 Cal. 753 [247 Pac. 897]; *Stege* v. *City of Richmond,* 194 Cal. 305 [228 Pac. 461]; *Gadd* v. *McGuire,* 69 Cal. App. 347 [231 Pac. 754].)''

■ Petitioner further contends, and cites authority supporting its position, that the state may surrender to a municipality its control over a matter which may be of general concern to the people of the state if, in the judgment of the state, it is for the best interests of the people so to do, and that under its cooperative contract with the city of Los Angeles for the improvement of the several streets and highways enumerated therein, the state has surrendered to said city its control over the construction of ten of said projects. There can be no question of the power of the state to surrender to a city or county control over certain matters which are of general concern to the people of the state if, in the judgment of the state, it is for the best interests of the people to do so. Instances of such acts may be found in the cases of *Watson* v. *Greeley,* 67 Cal. App. 328 [227 Pac. 664], and *Patton* v. *City of Los Angeles,* 169 Cal. 521 [147 Pac. 141]. The transactions therein involved were approved by the courts. The legality of the provision of the cooperative contract between the city and the state, whereby the city is given the right to improve certain state highways within the city is not questioned. Still it does not necessarily follow that the work to be done in making said improvements is merely a municipal affair. The highways to be improved are public highways of the state, and they are of general concern to the people of the state. A large portion of the money to improve them is money belonging to the state, and the people of the state are concerned in its expenditure. To protect the interests of the state in the improvement of said highways, the state has reserved a supervisory authority over the city in the construction of said improvements and in the maintenance of said highways after their improvement. The improvement of said highways from their inception to their final completion are projects of the state. They are not municipal affairs in any sense in which those words are used in the Constitution. It follows, therefore, that all contracts for their construction are governed by and are subject to said general laws of

the state. Petitioner concedes that if the state should improve said highways under contract with some private individual or firm, it would be required to comply with the Public Works Wage Rate Act, but contends that by delegating the authority to the city of Los Angeles to make said improvements, it may do indirectly what by express provisions of law it is prohibited from doing directly. We do not think that, by the above-mentioned provisions of the act of 1933, it was intended to make any such distinction in the manner of letting contracts for the improvement of these newly created state highways.

Petitioner also relies upon section 363z of the Political Code, enacted in 1933, which in part reads as follows:

"The Department of Public Works may enter into contracts with any county, city and county, city, or joint highway district, or two or more of them in respect to the proportion of the expense of the acquisition, construction or improvement of any state highway to be borne by the respective bodies to such contract. Any such contract . . . may provide for the doing of the actual work of construction, or any part thereof, by any party thereto, *in any manner provided by law.*" The particular words in this section of the code on which petitioner relies are those italicized above. Petitioner contends that this section of the code should be read in connection with section 5 of the act of 1927, as amended in 1933, and hereinbefore set out and subdivision j of section 3 of said act, requiring the department of public works to spend annually from the state highway fund a certain percentage of the money received from the gasoline tax within the incorporated cities of the state, the proportion which each city is to receive to be determined by its population according to the last federal census.

By reading these several provisions of the law together, petitioner argues that the legislature in its enactment, "declared a policy to relinquish control and jurisdiction of the improvement of a city street constituting a part of the state highway system and place that control and jurisdiction in the city, making such improvement a municipal affair and not subject to the control of general laws". Petitioner bases this argument exclusively upon the provision found in said section 363z of the Political Code, giving to the municipality that has contracted with the state to improve

a state highway within its corporate limits the right to provide for the doing of said work of construction "in any manner provided by law". In amplification of its argument, petitioner calls attention to the State Contract Act (Stats. 1933, p. 2108), which provides among other things, that the construction or improvement of any state structure, building, road or other state improvement of any kind, with certain exceptions not relevant here, shall be done under the exclusive control of the department of public works. It was to avoid the general provisions of this act requiring the construction of all state improvements to be done under the exclusive control of the department of public works, petitioner contends, that section 363z of the Political Code was enacted, which empowers the department of public works to enter into contracts with municipalities or joint highway districts for the construction of state highways. With these several provisions of the law in mind, petitioner concludes that the intent of the legislature in providing in section 363z that any contract made pursuant to said section by the state with a county or city or other state agency mentioned therein "may provide for the doing of the work of construction by any party thereto in any manner provided by law", was to provide that the law governing the letting of contracts by the party authorized to let such contracts should govern, and that if the agreement be between the state and a county operating under a county charter, and such agreement provided that the improvement contract shall be let by the county, then the manner provided by law for the letting of such contract is to be found in the provisions of the county charter, and if the agreement for such highway work be between the state and a city governed by a freeholders' charter, and such agreement provides that the improvement contract shall be let by the city, then the manner provided by law for the letting of such contract is the manner provided by the charter of said city. We are not able to agree with this argument of petitioner. It will be noted that the provision of this code section provides, that "any such contract (that is the contract between the Department of Public Works and city, city and county, or joint district) may provide for the doing of the actual work of construction, or any part thereof, by any party thereto, in any manner provided by

law''. This section does not purport to limit, enlarge or in anywise modify or change the existing law relative to the manner of doing such construction work, but simply gives the parties to such contract the authority to contract for its construction in pursuance of such existing laws. We agree with the construction placed on this section of the code by the attorney-general in a brief filed herein as *amicus curiae,* in which he takes the position that this section of the code is simply a legislative declaration that the provisions of law governing the award and execution of contracts by any of the parties to such an agreement may be followed in awarding a construction contract. If the state does the work directly it must proceed under the law governing state contracts; if a city or county does the work as the state's agent, the agent should follow the law governing it in regard to the letting of contracts dealing with matters which are not exclusively municipal affairs.

This disposes of all questions raised by respondents in their attack upon the validity of the contract as drawn and presented to them for the improvement involved herein. As the contract fails to comply with the provisions of the Public Works Wage Rate Act, it cannot be sustained, and the respondent's refusal to execute said contract was based upon legal and valid grounds.

One of the *amici curiae* filing briefs herein raises two further questions respecting the validity of said contract. These questions do not arise from any of the facts stated in the petition, and for that reason they are not properly before us. The party raising these questions has failed to adequately support its contention by a sufficient brief or citation of authorities, and therefore we express no opinion on these questions. We feel it is sufficient in this proceeding to consider only the questions which are properly before us as shown by the allegations of the petition and the general demurrer thereto of respondents.

For the reasons hereinbefore given, the petition is denied and the alternative writ heretofore granted is discharged.

Shenk, J., Langdon, J., Preston, J., Waste, C. J., and Seawell, J., concurred.