[S. F. No. 15614. In Bank.—August 31, 1936.]

CITY OF REDWOOD CITY (a Municipal Corporation), Petitioner, v. B. E. MYERS, as City Treasurer, etc., Respondent.

Albert Mansfield, George Herrington, W. J. Kenney and Orrick, Palmer & Dahlquist for Petitioner.

Ernest A. Wilson, Rudolph A. Rapsey and Kirkbride & Wilson for Respondent.

CURTIS, J.—This is a proceeding to compel the respondent as treasurer of the City of Redwood City, by writ of mandate, to sign certain bonds issued by the city council of said city under and in pursuance of an act of the legislature which we will refer to as the Municipal Investment

Bond Act. (Stats. 1915, p. 109.) This act is brief, containing only three sections.

By section 1 of this act, it is provided that:

"Any municipality incorporated under the laws of the State of California may incur a bonded indebtedness by the issuance and sale of bonds to be known as 'municipal investment bonds', the proceeds from the sale of which shall be used for the purchase of municipal securities or evidences of debt, either of the municipality or of boroughs or districts therein; including municipal bonds, borough bonds, district bonds, or any bonds or liens arising out of the construction or acquiring of public improvements by local assessment within such municipality. Bonds, securities or other evidences of debt so purchased may at any time be resold at a price not less than that at which they were originally purchased by the city. The proceeds from the sale of investment bonds may also be used for the temporary financing of public improvements which shall have been legally authorized to be paid for by special assessments. Money expended from a municipal investment fund shall, as soon as practicable, be returned to said fund from the receipts derived from the securities in which it was invested, or from the proceeds of the special assessments levied and collected to meet the cost of such improvements in accordance with the legal procedure that may be prescribed therefor."

Section 2 of said act provides that bonds issued under the provision of said act shall be issued in the manner provided therefor by the Municipal Bond Act of 1901 (Stats. 1901, p. 27), and acts amendatory thereof, with one minor exception not material to any issue involved in this proceeding.

Section 3 of the Municipal Investment Bond Act provides that: "It shall be the duty of the legislative branch of every municipality availing itself of this act to keep the funds arising from the sale of bonds issued under this act separate and distinct from all other municipal funds, in a fund to be known as the 'municipal investment bond fund', and to invest and reinvest the same in bonds of said municipality, or of boroughs or districts therein, or in bonds, or liens or other evidences of debt arising out of the construction or acquisition of public improvements therein by local assessments, and to collect the principal thereof and the

interest thereon and place the same in said fund; and said municipality shall have the right to sell, at the discretion of its legislative branch, any such bonds, evidences of debt or liens acquired or held by it; provided, that none of such bonds, evidences of debt or liens shall be sold at a price less than the cost or expense to such municipality of such bonds, evidences of debt or liens respectively. The amount received from the sale of such bonds, evidences of debt or liens so sold, together with the accrued interest thereon, shall be paid into said 'municipal investment bond fund' and may be again reinvested as aforesaid.''

The city council of the City of Redwood City has taken the necessary steps required by the Municipal Investment Bond Act and the Municipal Bond Act of 1901 in order to incur an indebtedness in the sum of $425,000 by the issuance and sale of bonds in said sum. As set forth in the ordinance calling a special election to vote upon the proposition of incurring said indebtedness, said indebtedness was to be incurred ''for the object and purpose of acquiring the following municipal improvement of said City, to wit: A municipal investment bond fund to be used for the purchase of municipal securities or evidences of debt of said City of Redwood City or of boroughs or districts therein; including municipal bonds of said City, bonds of boroughs or districts therein, or any bonds or liens arising out of the construction or acquiring of public improvements by local assessments within said municipality''. The proceedings were carried to completion, and after the proposition to incur said indebtedness and issue said bonds had been submitted to, and had received a favorable two-thirds vote of, the electors of said city, the council by resolution ordered said bonds to be issued, and directed the respondent to sign said bonds as the treasurer of said city. The respondent refused to sign the bonds, and this action followed his refusal. No question is raised as to the regularity or sufficiency of any of said proceedings taken by the city council for the purpose of incurring said indebtedness, and it is conceded that it is the duty of the respondent to sign said bonds if they are legally authorized. The only question raised by respondent as justification of his refusal to sign said bonds is that the Municipal Investment Bond Act is unconstitutional and, therefore, all proceedings taken by the

city council of said city for the purpose of creating said indebtedness and the issuance of said bonds are void and cast no duty upon respondent as the treasurer of said city to sign said bonds or to perform any other act in reference thereto.

The petition contains the usual allegations setting forth the various steps taken by the city council required by the two acts mentioned above in proceedings to issue bonds thereunder; the vote of the electors of said city in favor of said bond issue, and the demand upon and refusal of the respondent to sign said bonds as the treasurer of said city. The return consists of a general demurrer to said petition.

The title of the Municipal Investment Bond Act is as follows: "An act authorizing any municipality to incur indebtedness by the issuance and sale of bonds for the purpose of investing the proceeds arising from the sale thereof in other bonds, evidences of debt or liens issued for public improvements in said municipality." As both the title and the text of the act indicate, the act is in the nature of an investment measure by means of which the legislature has attempted to bestow upon the municipalities of the state the power and authority to incur an indebtedness by the issuance of bonds for the purpose of investing the proceeds received by the sale of said bonds in improvement bonds of the city, or like bonds of improvement districts within the city. Money expended from the municipal investment bond fund shall be returned to said municipal investment bond fund, as soon as practicable from receipts derived from the proceeds of the special assessments levied and collected to meet the cost of the improvements for which the purchased bonds were issued. In case improvement bonds or other securities are sold as provided by the act, the proceeds of the sale are to be paid into said municipal investment bond fund. Funds in the municipal investment bond fund shall be kept separate and distinct from all other funds of the city, and shall be invested and reinvested in the securities of the city or its improvement districts. If the improvement bonds or other securities purchased with the proceeds of the sale of said investment bonds are not sold, it is made the duty of the city to continue "to collect the principal thereof and the interest thereon and place the same in said [municipal investment bond] fund".

While the Municipal Investment Bond Act has been in force since the year 1915, it has never to our knowledge been before the appellate courts of this state. Whether it has ever been used prior to the institution of the proceedings thereunder by the City of Redwood City, we have no means of knowing. We have made an exhaustive search of the proceedings of the legislature during the time the act was pending therein and at the time of its passage, but no discussion by any member of the legislature as to the objects to be accomplished by its enactment or the purpose in the minds of the lawmakers in making the provisions of the act a part of the statutory law of the state is to be found in the journal of either house of the legislature. We are, therefore, confined to the terms of the act itself in determining the purpose and the intent of the legislature in the enactment of the statute. The language of the act is reasonably free from ambiguity and indicates that it was the intent of the legislature to authorize the municipalities of the state to incur a bonded indebtedness, the proceeds of which might be invested and reinvested in its own bonds or in those of the improvement districts within the municipality. This determination becomes important in view of certain claims made by the petitioner in support of the validity of the proceedings under which the investment bonds were issued.

Petitioner states in its reply brief that there are thirty-eight improvement districts within the City of Redwood City which have made improvements and have issued bonds under the Improvement Bond Act of 1915 (Stats. 1915, p. 1441) in payment of said improvements, and that thirty-five of said districts are delinquent in the payment of the principal or interest of said bonds; that under section 16 of said act the city is liable each year for a general tax not exceeding ten cents on each one hundred dollars of assessable property within the city in payment of said delinquent principal and interest of each of said thirty-five delinquent districts, or in all, an annual tax of $3.50 on each one hundred dollars of assessable property within the city. Furthermore, the petitioner asserts in said brief that a large number of pieces of property in said improvement districts, due to past delinquencies have been sold for taxes and that these properties have not been redeemed by the original

owners thereof or by any other person and that this property has by reason of said sales been withdrawn from the tax rolls of the city and is now contributing nothing toward the support of the general expenses of said city. Petitioner frankly admits that if it is permitted to issue said investment bonds, it intends to sell the same and invest the proceeds of said sale in the purchase of said delinquent bonds of said improvement districts, and thus escape the liability of levying said annual tax of $3.50 upon the assessable property of said city. Petitioner further asserts that when it has acquired the improvement bonds by purchase with the proceeds of the investment bonds, ''it will be in a position to thereby reduce the burden of the special assessment tax upon the property assessed for the payment of such bonds to such an extent that either redemptions will be made possible or the property will be placed in a condition whereby it can be resold to other owners''.

Petitioner does not indicate any specific or even any general provision of the act which would justify the use of funds in the municipal investment bond fund for the purposes which it admits it intends to use them if permitted to issue and sell said municipal investment bonds. On the other hand, petitioner appears to assume that the money in the municipal investment bond fund may be used to retire improvement bonds and to relieve property owners whose property has been sold for delinquent assessments levied to pay improvement bonds. Petitioner then endeavors to show that such a use of public funds is a public use and that a statute authorizing the same is not objectionable from a constitutional point of view. We have recently held that where property within improvement districts has been sold for delinquent assessments and hopelessly withdrawn from the tax rolls of the county to such an extent as to seriously impair the county revenues, a statute which recognizes this serious condition in which the county is placed by the unusually large amount of such delinquent property, and authorized the expenditure of public money within reasonable limits for the purpose of assisting the distressed property owners and thus restoring this delinquent property to the tax rolls of the county is a legitimate use of public funds. (*County of Los Angeles* v. *Jones*, 6 Cal. (2d) 695 [59 Pac. (2d) 489]; *County of San Diego* v. *Hammond*,

6 Cal. (2d) 709 [59 Pac. (2d) 478, 105 A. L. R. 1155].)
But the question of the operation of such a statute is not
before us in this proceeding.    On the other hand, the
question which we have to answer is: Does the Municipal
Investment Bond Act of 1915 permit or confer any author-
ity upon the city issuing municipal investment bonds to
use the proceeds received from the sale of said bonds for
the purpose of retiring improvement bonds, issued either by
the city or its improvement districts, or to relieve the de-
linquent property owners and thereby assist in restoring
delinquent property to the tax rolls of the city? Not only
do we fail to find any provision in the Municipal Invest-
ment Bond Act which would directly, or even impliedly,
authorize such a use of funds in the municipal investment
bond fund for those purposes, but we find in the act specific
provisions which in our opinion prohibit any such use of
such fund. As we have seen, the act provides that after
the city has acquired by purchase bonds of the city or of
any of its improvement districts, it may do either one
of two things regarding said bonds. It may sell the bonds
so purchased for a sum not less than it paid for them and
the money received from such sale ''shall, as soon as prac-
ticable, be returned to said fund''. If it keeps the bonds so
purchased, the express duty is enjoined on the city ''to col-
lect the principal thereof and the interest thereon and place
the same in said [municipal investment bond] fund''. It
enjoins upon the legislative body of the city availing itself
of the privileges of said act the duty to keep the funds aris-
ing from the sale of municipal investment bonds separate
and distinct from all other municipal funds in the munici-
pal investment bond fund and ''to invest and reinvest the
same in bonds of the municipality'', or in bonds of improve-
ment districts in said municipality. These mandatory pro-
visions of the act must be complied with by the municipality
and its officers, and preclude any idea that the money in the
investment fund may be used for retiring improvement
bonds or to relieve property owners whose property is lia-
ble for the payment of said improvement bonds. These
provisions of the act make it the duty of the municipality
availing itself of the privileges of said act when the city
has acquired improvement bonds under the terms of said
act and has not sold the bonds so acquired, to collect the

principal and interest thereof in the manner provided in the Improvement Bond Act of 1915 (Stats. 1915, p. 1441), under which the improvement bonds were issued. In the collection of the principal and interest of said improvement bonds, the city is entitled to, and it is made its duty to, enforce all the remedies provided by said Improvement Bond Act of 1915 for the collection of the principal and interest of said bonds, including the enforcement of the assessments against the property of the individual property owners within the district and the levy and collection of the ten cents tax upon the assessable property of the city for each delinquent district within the city, as provided by the Improvement Bond Act of 1915.

There is one further provision of the Municipal Investment Bond Act which we should mention, although petitioner does not claim that it is placing any particular reliance upon this provision of the act to justify its purpose to use the proceeds of the investment bonds to retire the improvement bonds or to relieve the delinquent property owners. This provision reads as follows: "The proceeds from the sale of investment bonds may also be used for the temporary financing of public improvements which shall have been legally authorized to be paid for by special assessments." The general provisions of the act immediately following the sentence just quoted, that the money expended for that purpose, however, shall be returned as soon as practicable to the Municipal Investment Bond Fund from the receipts derived from the securities in which it was invested or from the proceeds of special assessments, applies unquestionably to funds which may be used for temporary financing purposes. This provision is simply incidental to the main purpose of the act, and furnishes no justification for the permanent purchase of improvement bonds in order that they may be retired and in that manner relieve either the property owners of the city or of the districts from the liability imposed by the Improvement Bond Act of 1915 for the payment of said bonds.

Whatever may be the ultimate conclusion as to the constitutionality of the Municipal Investment Bond Act, it is perfectly clear that money in the municipal investment bond fund may not be used by the city either for retiring improvement bonds purchased with said money, or in relieving

the property within the district of any part of the assessments which are made a lien upon said property to secure the payment of said improvement bonds. No such purpose is expressed in the act and no such purpose may be reasonably drawn from its provisions. It is in no sense a relief measure—much less one that may be used as a cure-all for the ills that have overtaken various communities throughout the state by reason of extensive and costly municipal improvements which were constructed during the summer of prosperity and must be paid for during the winter of depression.

In passing upon the validity of the Municipal Investment Bond Act a further analysis of its provisions than that heretofore given them is necessary. As we have seen, the act, as its title and text clearly denote, is simply an investment measure and was not designed to meet any other purpose. The investment fund which the act purports to create is produced by a sale of bonds issued by the municipality which are paid by an *ad valorem* tax levied upon all the property within the municipality each year until the principal and interest of all bonds are paid. The bonds are payable over a period of ten years. At the same time, the property within the several improvement districts is liable for the annual assessments levied for the purpose of paying the improvement bonds, and there is also the further liability of the city to levy the special tax of ten cents on each one hundred dollars of assessable property within the city. No part of this money in the municipal investment bond fund may be used to either pay the principal or interest of the investment bonds, or the principal or interest of the improvement bonds. Nor in case the special levy of the ten cents is needed, may any part of the municipal investment bond fund be applied to the payment in whole or in part of said levy. At the same time, the investment fund is being augmented by the payment therein not only of the principal of the improvement bonds which the city has purchased, perhaps at a discount, but also of all interest collected on said bonds. The most remarkable and unusual condition created by the Municipal Investment Bond Act is that no provision is made therein for any disposition of the money after it is once placed in the municipal investment bond fund except that it shall

be invested and reinvested. The funds therein are allowed to accumulate and may grow to vast proportions, yet the city is powerless to use any part of it for any municipal purpose whatever except that it may purchase more bonds and from the collection of the principal and interest of these newly acquired bonds further augment its municipal investment bond fund. A consideration of this most unusual condition prompts the query as to whether the creation of such an investment fund under the conditions fixed by the act is a legitimate or legal purpose to which the funds of the municipality may be devoted.

We will assume without deciding the question that a city may be authorized under the Constitution of this state to incur an indebtedness and issue bonds for the purpose of creating an investment fund to be used by it under proper regulations in the purchase and sale of its own bonds and those of the improvement districts within corporate limits. We do not find it necessary to pass upon this question for we are satisfied that the Municipal Investment Bond Act, for reasons which we will proceed to state, cannot be sustained under the Constitution of this state.

By section 12 of article XI of the Constitution, the legislature may vest in a municipality the power to assess and collect taxes for municipal purposes. By this section of the Constitution the legislature is limited to empowering the municipalities of the state to levy and collect taxes for municipal purposes only. (*People* v. *Parks,* 58 Cal. 624, 644.)

Can the creation of this frozen investment fund be held to be a public purpose within the limitations of said constitutional section which restricts the power of the legislature to authorize a municipality to levy taxes for a municipal or public purpose? As we have seen, the municipality availing itself of the privileges of the act cannot use said fund for any purpose whatever except to invest and reinvest the same in improvement bonds. After all the improvement bonds acquired by the city have been paid, and for that matter, after all the investment bonds also have been paid, the municipal investment bond fund remains intact except as it may be diminished by losses or augmented by gains from the collection of the interest on the improvement bonds as well as the principal. Between

the time when the city may have purchased said improvement bonds and the time of their final payment, the municipality must levy an annual tax to meet the principal and interest of the municipal investment bonds until they are fully paid, and it must also enforce all the provisions of the Improvement Bond Act of 1915, under which the improvement bonds were issued, which were enacted for the purpose of raising the funds required to pay said bonds with interest. There will thus be cast upon the taxpayers of the city a double burden during all of that time for which they receive no benefit or advantage. It must be apparent that no such unreasonable and ill-advised legislation can be sustained. The legislature had no power to authorize the imposition of a tax upon a municipality for which the municipality receives no benefit. (*Reclamation Dist.* v. *Birks,* 159 Cal. 233, 240 [113 Pac. 170].) If the legislature had power to amend the Municipal Investment Bond Act so that this frozen investment might be hereafter used by the city for some municipal purpose, the problem would be less complicated. However, no such power is lodged in the legislature. The investment bonds constitute a contract between the municipality and the property owners, and any attempt by the legislature to impair that contract would be contrary to the well-established rule prohibiting such use of legislative power. (*Peery* v. *City of Los Angeles,* 187 Cal. 753 [203 Pac. 992, 19 A. L. R. 1044].) The Municipal Investment Bond Act, therefore, in our opinion, contravenes the constitutional provision above mentioned in that it attempts to confer upon the municipalities of the state the power and authority to levy taxes for a purpose which in no way benefits the municipality or its taxpayers, and which cannot be held to be a municipal purpose.

The petition is denied, and the alternative writ of mandate heretofore issued is hereby discharged.

Waste, C. J., Seawell, J., Shenk, J., and Langdon, J., concur.

Rehearing denied.