[Civ. No. 14766.   First Dist., Div. One.   Nov. 16, 1951.]

EUGENE REYES PEREZ, M.D., Appellant, v. CITY OF SAN JOSE et al., Respondents; STATE OF CALIFORNIA, ex rel. Department of Public Works, Intervener.

Callaghan, Giannini & Anello for Appellant.

Robert E. Cassin, City Attorney, and Eugene L. Rendler, Assistant City Attorney, for Respondents.

Robert E. Reed, Russell S. Munro, Harry S. Fenton and Warren P. Marsden for Intervener.

BRAY, J.—This appeal by plaintiff from a judgment in favor of defendants in a taxpayer's suit raises the question of whether a municipality may use tax funds for the improvement, jointly with the state, of a state highway within the municipality's boundaries.

## FACTS

The appeal is on an engrossed settled statement. The Alameda in San Jose is a part of State Highway Route No. 2. Pursuant to a prior cooperative agreement between the city and the state, the city promulgated plans and specifications for a central dividing strip 6 feet in width, electrical traffic signals, and a central highway lighting system, for the improvement of a certain portion of The Alameda within the city limits. After advertising for bids the city let a contract for the performance of the work. The total contract price is $71,878.52. All but $15,000 of this amount was put up by the state. The $15,000 was appropriated by ordinance from the unappropriated surplus of the city's general fund, to wit, tax funds.

## WAS THIS A MUNICIPAL PURPOSE?

The determination of plaintiff's contention that the appropriation of city tax funds for such a purpose is unconstitutional depends upon whether such purpose is a municipal one. Plaintiff cites article XI, section 12 of the Constitution, which provides: "Except as otherwise provided in this Constitution, the Legislature shall have no power to impose taxes upon counties, cities . . . for county, city . . . or other municipal purposes, but may : . . vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." Plaintiff then points out that in *Rancho Santa Anita, Inc.* v. *City of Arcadia*, 20 Cal.2d 319, 323 [125 P.2d 475], the court said: "Article XI, section 12 of the

Constitution quoted above provides that the taxing power conferred upon cities by the Legislature may be exercised only for municipal purposes . . .'' (To the same effect, *People v. Parks,* 58 Cal. 624; *City of Redwood City* v. *Myers,* 7 Cal.2d 283 [60 P.2d 291, 108 A.L.R. 727].) Plaintiff then argues that the improvement of a state highway, even though within the city limits, is not a municipal affair. Plaintiff relies principally upon *Southern Calif. Roads Co.* v. *McGuire,* 2 Cal.2d 115 [39 P.2d 412], where the court used some rather broad language apparently supporting plaintiff's contention. There, the city had entered into a cooperative contract with the state for the improvement, within the city, of Sepulveda Boulevard, a state highway. The moneys to be used by the city were from state funds and not from municipal tax funds. The question presented was whether the contract let by the city for doing the work was subject to the provisions of the Public Works Wage Rate Act as a portion of the state funds to be used came from the federal government. It was contended that the improvement of the boulevard by the city was a municipal affair and therefore the contract for doing the work was not subject to the act. The court said (p. 123) : ''The legality of the provision of the cooperative contract between the city and the state, whereby the city is given the right to improve certain state highways within the city is not questioned. Still it does not necessarily follow that the work to be done in making said improvements is *merely* a municipal affair. . . . The improvement of said highways from their inception to their final completion are projects of the state. They are not municipal affairs in any sense in which those words are used in the Constitution.'' (Emphasis added.) It will be noted that the court stated that the improvement in question was not necessarily *merely* a municipal affair before using the language giving plaintiff here comfort. On pages 121-2 the court used the same language: ''. . . the work of improving said street is not *merely* a local or municipal affair of the city, but . . . it is an affair in'which the state has a direct and vital interest.'' (Emphasis added.) The determination that a contract for the construction of a portion of a state highway by a city with state funds under a cooperative agreement with the state, is not a municipal affair for the purposes of the application of the Public Works Wage Rate Act, is not determinative of the question here. Particularly is this so in view of the holdings in the cases hereafter discussed.

In *Shea* v. *City of San Bernardino,* 7 Cal.2d 688 [62 P.2d

365], plaintiff sued for injuries caused by a defect in a city street at a railroad crossing. Defendant contended that the railroad commission had exclusive jurisdiction over the crossing. The court held that the improvement of streets within the boundaries of a city is an affair in which the city is vitally interested. A somewhat analogous situation to that in our case occurs in *City of Sacramento* v. *Adams,* 171 Cal. 458 [153 P. 908]. ''Substantially, then, the question is whether the city of Sacramento may expend municipal funds or incur a bonded indebtedness, for the purpose of purchasing real property in the city to be donated to the state, on condition that the state erect and equip thereon public buildings for the use of the state, at an expense of at least three million dollars, devoting such portion of the real property as is not actually used for buildings to the purposes of a public park for the enjoyment of the people. It is true that the land proposed to be purchased and donated to the state is to be under the absolute control of the state in so far as its needs and desires as to the actual occupation of the same by state buildings are concerned, and that the state will be at liberty to use all of the same for buildings, excluding all use of the same for park purposes. So that substantially the question is whether the city of Sacramento may acquire land to be absolutely donated to the state for state buildings.'' (P. 461.) ''There has not been cited, and we have not found, any case which denies the power of the *state* to authorize one of its municipalities to appropriate money or property to the state for a public purpose which may fairly be held beneficial to the municipality and the people thereof, notwithstanding that such purpose is not strictly a municipal one.'' (P. 465.) The court concluded that a bond issue by the city to raise funds for that purpose was not unconstitutional. As pointed out by plaintiff, the court in that case was mainly concerned with the question of whether the use of city funds for the purpose mentioned constituted a violation of section 31, article IV of the Constitution, which prohibits the Legislature from authorizing the giving or lending of the credit of any city for the aid of any corporation, and held that the state is not a corporation within the meaning of the section. Nevertheless, it was necessary for the court to determine as it did, that although the purpose was not strictly a municipal one, it was a public purpose beneficial to the municipality and its people and hence it was a municipal affair.

In *City of Oakland* v. *Garrison,* 194 Cal. 298 [228 P.2d

433], the court said (p. 304) : "The question, then, is whether the improvement of this particular street within the city of Oakland is a matter of such general county interest that the county funds may properly be expended therein." It then held that it was. ■ Certainly, if the improvement by the county of a city street is a county affair, the improvement by a city of a state highway within its borders is a city affair.

In *City of Oakland* v. *Williams*, 15 Cal.2d 542 [103 P.2d 168], the contention was made that the conduct by several contiguous cities of a joint survey of the entire affected area for sewage disposal purposes was a "state" and not a "municipal" affair. The court refused to uphold such contention. It held that as the solution of the respective municipal sewage problems of these cities required a joint survey of the affected area, such survey was a municipal affair as to each city and that the expenditure of the funds of each city for that purpose was a proper municipal expenditure.

In *Lewis* v. *Leon County*, 91 Fla. 118 [107 So. 146], the court said that the expenditure of county funds for the improvement of state roads passing through the county was for a county purpose. And in *Jackson* v. *City of Rome*, 182 Ga. 848 [187 S.E. 386], a municipal purpose was found allowing a city to buy land with funds raised by municipal taxes and then donate it to the state for the construction of a state highway through the city.

■■ A good test to apply to the question here is set forth in the following from *Bank* v. *Bell*, 62 Cal.App. 320, 330 [217 P. 538] : "In defining a 'municipal affair' it has been said that 'the true test is that which requires that the work should be essentially public and for the general good of all the inhabitants of the city. It must not be undertaken merely for gain or for private objects. Gain or loss may incidentally follow, but the purpose must be primarily to satisfy the need, or contribute to the convenience, of the people of the city at large. Within that sphere of action, novelty should impose no veto.' "

Almost identically the same question has been decided in Kansas where the Constitution is analogous to ours, except that there the question was the expenditure of county instead of city funds on state roads. In *State* v. *State Highway Com.*, 139 Kan. 858 [33 P.2d 324], the question was whether funds that were collected by taxes for county roads were diverted for another purpose when they were used to improve state roads within the county. The court said that to so hold

would mean that state roads ceased to be county roads as much as if they were beyond the borders of the state. It pointed out that generally the cost of maintaining state highways is on the state and that in exchange for its assistance in the improvement of the highway within its borders the county is relieved of such maintenance and thereby has more money available for the construction and maintenance of other county roads. It then held that it could not be said that money spent on state roads was not of special benefit to the taxpayer of the county and that there is no intrinsic difference between a state, city, or county road.

### Streets and Highways Code

■■ Plaintiff contends, further, that by sections 113, 114, 194, 200, 2107 and 2109 of the Streets and Highways Code enacted under the authority of section 25, article IV of the Constitution, which provides that the Legislature may establish a system of state highways, and pass all laws necessary or proper to construct and maintain them, the Legislature intended to limit cities in the improvement of state highways within their borders exclusively to the use of funds allocated to them by the state.

An examination of these sections indicates no such intention. Section 113 provides that upon request from the highway department any city may acquire any real property within the city needed for state highway purposes, taking title either in its name or that of the state. Any such city may aid in the construction, improvement or maintenance of any state highway within its boundaries by contributing any part of the expense thereof to the department "out of any city funds available or to become available for construction, improvement or maintenance of streets within the city." Obviously, these contributions are not limited to state funds received by the city, but include other funds, such as tax funds, which the city could use for its own streets. Section 114 provides that when the highway commission has allocated funds for the construction, maintenance or improvement of a state highway within a city, the department may enter into a cooperative agreement with such city for the performance of the work by the department or the city, or for the apportionment of its expense between the department and the city. Here there is no limitation upon the city. The section sets forth the power of the department to cooperate with the city and to apportion the expense after the commission has allocated funds

for the department (not the city) to use. Section 131 provides for certain aid which the department may give to a city applying therefor and also provides that the city may pay into the state treasury, for the state to use for highway purposes, any moneys in its treasury or raised by the issuance of bonds which moneys are available for use by the city for highway purposes. Here, again, there is no limiting of the use by the city of moneys for state highway purposes to moneys received from the state. While the section deals with payment to the state of city funds for state highway purposes, it would be unreasonable to hold that thereby the Legislature intended to limit the use of city tax funds to a payment to the state to use it for state highways within the city, and to prohibit the use of it by the city for the same purpose under the cooperative agreements and apportionment of expense which section 114 provides that the department may enter into with the city. Section 200 provides that to permit the accomplishment of a major project in its entirety, the city may accumulate money accruing over a period of years from the state highway fund. The city ''may include in its budget and the department may approve projects for the expenditure of any money accruing to the city under the provisions of this article upon any State or county highway or other major traffic street, including those outside the limits of such city.'' Here, again, is no limitation on the use by the city of its tax funds. It is a limitation only on the use by the city of the moneys which it receives from the state. Section 2107 provides that a certain sum from the gas tax moneys shall be transferred to the state highway fund for expenditure in cities as provided in section 194, which section provides for the expenditure and proportioning within the cities of said moneys. Section 2109 provides from what funds the state may maintain and construct and improve state highways in cities.

Not only is there no indication that the Legislature intended by the above mentioned sections or by any of the other sections of the Streets and Highways Code, to limit the cities in the construction and maintenance of state highways within their boundaries to state funds, but the language of section 113 alone shows that it intended to expressly permit the use of any funds which the city might properly use for the construction and maintenance of its own streets. Even if, as contended by plaintiff, section 113 refers only to state funds received by the city, the situation is not changed.

■ It and the other sections referred to simply provide a permissive method of use by the cities of gas tax funds for cooperation with the state in the construction of state highways. The cities are not *compelled* to cooperate, nor, should they desire to cooperate, are they in any wise prevented from using city tax funds for that purpose. See *Shealor* v. *City of Lodi*, 23 Cal.2d 647 [145 P.2d 574], to the effect that enabling legislation does not necessarily require an interpretation making the method provided exclusive.

■ San Jose and its inhabitants receive a special benefit, as compared with the rest of the state, in the improvement of The Alameda within the city limits. It facilitates local as well as through traffic. The lighting, the signals, and the general safety advantages of the improvement are for the benefit of the local citizens as well as others. There could be no possible question that this improvement on any other city street would be a municipal purpose. The fact that this city street is also a state highway makes it no less a city street and makes its improvement no less a matter of city concern.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.